<u>FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

\----------------------------------------------------------- x

In re:                                                   :
                                                         :
**DEFLORA LAKE DEVELOPMENT**                             :        Chapter 11
**ASSOCIATES, INC.,**                                    :
                                                         :        Case No. 17-35318 (CGM)
                                                         :
                                        Debtor           :
\----------------------------------------------------------- x

\----------------------------------------------------------- x

**DEFLORA LAKE DEVELOPMENT**                             :
**ASSOCIATES, INC.,**                                    :
                                                         :
                                                         :
                                     *Plaintiff*,        :
                                                         :
                                                         :
            v.                                           :        Adv. No. 17-09006 (CGM)
                                                         :
**HYDE PARK, A WISCONSIN LIMITED**                       :
**PARTNERSHIP, and LEWIS D.**                            :
**WROBEL,**                                              :
                                                         :
                                                         :
                                  *Defendants.*          :
\----------------------------------------------------------- x

### MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS

<u>**A P P E A R A N C E S**</u> **:**

Elizabeth A. Haas, Esq., PLLC
254 S. Main Street, Suite 302
New City, NY 10956
*Counsel for Debtor/Plaintiff*
By:     Elizabeth A. Haas

Benowich Law, LLP
1025 Westchester Avenue
White Plains, NY 10604
*Counsel for Creditor Hyde Park, LP*
By:     Leonard Benowich

United States Trustee
74 Chapel Street
Albany, NY 12207
By:     Alicia M. Leonhard

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

The Debtor-Plaintiff here, DeFlora Lake Development Associates, Incorporated

("Debtor"), filed the instant complaint initiating this adversary proceeding against Defendant

Hyde Park, LP's ("Hyde Park") and Lewis D. Wrobel, as Escrow Agent only, seeking a

determination that certain escrow funds are property of the bankruptcy estate and turnover of

property of the bankruptcy estate pursuant to 11 U.S.C. §§ 541 and 543, a declaratory judgment

determining whether Hyde Park has an allowable claim for attorneys' fees, and the nature, extent

and validity of Hyde Park's claims against the bankruptcy estate. Am. Compl. ¶¶ 1, 40, 41, ECF

No. 8.[1]  Now pending before the Court is Hyde Park's motion to dismiss the complaint for lack

of subject matter jurisdiction, on grounds of *res judicata* and judicial estoppel. Mot. Dismiss 1–3,

ECF No. 12.  For the reasons stated below, and upon the record of the hearing held on July 18,

2017, Hyde Park's motion to dismiss is DENIED.

**BACKGROUND**

Debtor filed a petition for reorganization under chapter 11 of the Bankruptcy Code on

March 2, 2017.  *See* Petition, *In re DeFlora Lake Dev. Assocs.*, No. 17-35318 (Bankr. S.D.N.Y.

Mar. 2, 2017).  Debtor is a real estate holding company.  Local Bankr. Rule 1007-2 Aff. ¶ 3, *In*

*re DeFlora Lake Dev. Assocs.*, No. 17-35318.  There are two shareholders of the Debtor.  *Id.* ¶ 9.

At the time of the filing of the petition, the Debtor had no employees and generated no regular

income.  *Id.* ¶¶ 14–15.

The Debtor filed for chapter 11 in order to obtain the benefits of the automatic stay and to

---

[1] Unless otherwise indicated, all citations to litigation documents are to the docket of adversary proceeding 17-09006.

recover property for the benefit of the estate that is currently being held in a special escrow account held by Mr. Wrobel as deed escrow agent. *Id.* ¶ 4; Opp'n to Mot. Dismiss 3–4, ECF No. 14-5. The Debtor's primary asset is a parcel of real estate located in Dutchess, and the monies in the special escrow fund, which are subject to the competing claims of Hyde Park and the subject of this adversary proceeding. *See* Local Bankr. Rule 1007-2 Aff. ¶ 11, *In re DeFlora Lake Dev. Assocs.*, No. 17-35318.

Debtor's predecessor, Ceasar DeFlora, and Hyde Park entered into a purchase agreement for the sale of land in 1980 ("the Land Contract"). Pursuant to the Land Contract, Hyde Park was to purchase 480 acres of land from the Debtor's predecessor, subdivided into several lots of land. Am. Compl. ¶ 9. At this time a sale price was established, and Debtor's predecessor agreed to extend the maturity date of the Land Contract upon Hyde Park's execution of a $250,000 note. Opp'n to Mot. Dismiss 2.

The Land Contract was amended several times. In a fifth amendment ("Fifth Amendment") to the Land Contract, executed in December of 1995, the parties agreed that Hyde Park owed Debtor $8,404,989.43 under the Land Contract and that Hyde Park would satisfy this debt solely from the proceeds of the management of the property and from the sale of parcels of the property. *Id.* ¶ 10; Mot. Dismiss 3. In the Fifth Amendment, the parties agreed that the obligation would be nonrecourse. Am. Compl. ¶ 13; Mot. Dismiss 3. The Fifth Amendment also provided that in satisfaction of Hyde Park's debt, the first $1,800,000 in sales' proceeds from the property would go to the Debtor. Am. Compl. ¶ 14; Mot. Dismiss 3. After the amount of proceeds reached $1,800,000, any additional revenue was to be equally divided between Hyde Park and the Debtor until the entire debt was repaid. Am. Compl. ¶ 14; Mot. Dismiss 3.

Page **3** of **22**

In 1999, Debtor informed Hyde Park that Debtor intended to sell three parcels of land for $900,000.  Am. Compl. ¶ 16; Mot. Dismiss 3–4 (quoting *DeFlora Lake Dev. Assocs. v. Hyde Park*, No. 08-cv-8155, slip op. at 3–4 (S.D.N.Y. Mar. 30, 2011).  Hyde Park objected on the grounds the sale price was too low.  Am. Compl. ¶ 16; Mot. Dismiss 3–4 (quoting *DeFlora Lake Dev. Assocs. v. Hyde Park*, No. 08-cv-8155, slip op. at 3–4 (S.D.N.Y. Mar. 30, 2011).  Hyde Park allowed the sale to go through on the condition that the Debtor deposit $207,116 in escrow with Mr. Wrobel as Escrow Agent.  *See* Opp'n to Mot. Dismiss Ex. 2, ECF No. 14-2.  Mr. Wrobel deposited the funds into two separate accounts, one for Hyde Park and one for the Debtor, each with separate tax I.D. numbers.  Am. Compl. ¶ 23; Mot. Dismiss 4.  The funds have remained in escrow with Mr. Wrobel since that time.  *See* Am. Compl. ¶¶ 21–24.  There was no written escrow agreement, only a collection of four letters from Hyde Park, the Debtor, and Mr. Wrobel confirming receipt of the funds and advising that he would be depositing the funds into two separate escrow accounts.  *See* Am. Compl. ¶ 24; Opp'n to Mot. Dismiss Ex. 2.

In 2008, Debtor filed suit in the District Court for the Southern District of New York ("District Court"), claiming Hyde Park had breached the Fifth Amendment to the Land Contract and seeking a declaration that Debtor was entitled to the special escrow funds.  Am. Compl. ¶ 25; *DeFlora Lake Dev. Assocs., Inc., v. Hyde Park*, No. 08-cv-8155 (S.D.N.Y. filed Sept. 22, 2008) ("DeFlora I").  The District Court found that both the Debtor and Hyde Park's breach of contract claims to the special escrow funds were time barred by the New York statute of limitations.  *Id.* ¶ 26; Mot. Dismiss Ex. 2 at 7–8.  The District Court ruled that the alleged breach of contract had occurred in 1999 when Debtor deposited the $207,116 into escrow with Mr. Wrobel, which occurred over six years before either Debtor or Hyde Park brought suit in the District Court.  *Id.*

In 2013, Debtor brought a second suit in the District Court seeking essentially the same relief. *DeFlora Lake Dev. Assocs., Inc., v. Hyde Park*, 13-cv-04811 (S.D.N.Y. filed July 11, 2013) ("DeFlora II"). Am. Compl. ¶ 27. In DeFlora II, Debtor alleged a different breach of contract claim against Hyde Park based on new facts. Mot. Dismiss Ex. 4 at 8:5–6, ECF No. 12-5. In 2012, Debtor alleged that it attempted to sell the final parcel of land subject to the Land Contract, and that Hyde Park had refused to release the parcel in violation of Debtor's right to do so under the Land Contract. *Id.* at 8:7–9:3. Debtor argued a new breach of contract theory based on the escrow letters sent to Mr. Wrobel. Mot. Dismiss at Ex. 5 at 7:19–8:7, ECF No. 12-6. The Debtor alleged the escrow letters evidenced an intent by the parties to settle the dispute over the escrow funds after the last parcel of land was sold. *Id.* at 8:3–20. On a motion to dismiss by Hyde Park, the District Court dismissed Debtor's new breach of contract theory, finding that the escrow letters did not provide a plausible basis to conclude the parties intended to settle the dispute over the fair market value of the parcels sold in 1999 after the sale of the last parcel. *Id.* at 22:22–24:8. In the alternative, the Court ruled that Debtor would also have been estopped from making this arguments based on DeFlora I. *Id.* at 24:9–14.

While the District Court dismissed the breach of contract claim, the District Court also specifically found that with respect to the special escrow funds, "the parties didn't intend that money to sit there forever until the end of time. They intended it to be disposed of." *Id.* at 23:10–12. The District Court also indicated that the parties retained the power to negotiate and agree on the disposition of the escrow funds. Otherwise, the funds were at risk of escheating to the state. *See* Mot. Dismiss Ex. 4 at 27. Hyde Park sought, and was awarded, attorneys' fees as the prevailing party. Am. Compl. ¶¶ 29–30.

After the District Court dismissed the DeFlora II action, Hyde Park sought an order enforcing the award of attorneys' fees, and turnover of the Debtor's interest in the special escrow funds to satisfy the fee award pursuant to New York Civil Practice Law and Rules § 5225 and § 5227. Mot. Dismiss Ex. 10 at 3, 11, ECF No. 12-11. The District Court granted Hyde Park's motion as to the attorneys' fees, and denied the motion for a turnover order. *Id.* at 5, 11–12. The District Court held that the attorneys' fees were to be paid by the Debtor "now" and not to be credited against Hyde Park's debt to the Debtor under the Land Contract as a non-recourse debt. *Id.* at 5. The District Court denied Hyde Park's motion for turnover on the grounds that Debtor did not have a "claim" to the escrow funds. *See id.* at 11–12. The Debtor appealed the District Court's determination that the non-recourse nature of the Land Contract prohibited a setoff of attorneys' fees against the special escrow fund. Hyde Park appealed the denial of that part of the motion seeking turnover of the special escrow funds. In separate summary orders, the Second Circuit affirmed the District Court's rulings on both issues. *See Deflora Lake Dev. Assocs. v. Hyde Park*, Nos. 15-2653-cv, 16-3436-cv, 2017 U.S. App. LEXIS 7814 (2d Cir. May 3, 2017); *DeFlora Lake Dev. Assocs. v. Park*, No. 16-2214-cv, 2017 U.S. App. LEXIS 7823 (2d Cir. May 3, 2017). In rejecting Hyde Park's arguments that it should be entitled to turnover of the fee award, the Second Circuit specifically held that neither parties' respective interests in the escrow funds had been determined. *See DeFlora*, 2017 U.S. App. LEXIS 7823, at *4.

## MOTION TO DISMISS

On June 15, 2017, Hyde Park filed a motion to dismiss the adversary case. Hyde Park asserts that under Federal Rule of Civil Procedure 12(b)(6), incorporated and made applicable herein by Federal Rule of Bankruptcy Procedure 7012, the Debtor's claims to the special escrow funds are barred by *res judicata* and judicial estoppel. Mot. Dismiss 1–2; 8–14. Hyde Park also

argues that this Court lacks jurisdiction to enter a turnover order, or to declare Hyde Park's rights in the special escrow funds on the grounds that the special escrow funds are not property of the estate, and that Mr. Wrobel is not a custodian under the language of the Bankruptcy Code. *Id.* at 15–17.

In response, Debtor argues that as the Debtor-in-possession in this chapter 11 bankruptcy case, Debtor has an obligation to marshal assets of the estate for the benefit of creditors. Opp'n to Mot. Dismiss 5–7. Debtor also argues that it must first be determined what property is property of the estate under Bankruptcy Code § 541. *Id.* at 8–10. Debtor asserts that a determination by the District Court that both the Debtor and Hyde Park's breach of contract claims are time barred does not mean the special escrow funds are not property of the estate. *Id.* at 9. Debtor further alleges that a determination on property of the bankruptcy estate is a determination of a property right under the Bankruptcy Code, and not a breach of contract claim that would be time-barred under New York law. *Id.* at 12, 14, 15.

Additionally, per the Second Circuit's determination on appeal in DeFlora II, Debtor states that the parties' respective interests in the special escrow funds remain unresolved and are not subject to *res judicata*. *Id.* at 9–10, 17. Debtor asserts that only the breach of contract claim has been decided, and that it is alleging a separate cause of action here before the Bankruptcy Court. *Id.* at 15. As part of the turnover proceeding, Debtor must show that Mr. Wrobel is a custodian of property of the bankruptcy estate. Debtor asserts that Mr. Wrobel is a custodian of property of the estate pursuant to the definition in the Bankruptcy Code at § 101(11). *Id.* at 19. Regarding judicial estoppel, Debtor argues that it has not changed its position in the context of this bankruptcy case. *Id.* at 17–18. Debtor is alleging that the special escrow funds are property of the bankruptcy estate—that legal position is not judicially estopped. *Id.*

As for jurisdiction, Debtor maintains that a determination of property of the estate is a core proceeding, and that this involves a matter concerning administration of the estate, a determination of a claim against the estate, and a proceeding on a turnover action, all of which are core proceeding under 28 U.S.C. § 157(b)(2). *See id.* at 18. Debtor maintains that Hyde Park's jurisdictional argument is predicated on the assumption that the special escrow funds are not property of the estate. *Id.* A proceeding to determine property of the estate is a core proceeding and squarely within this Court's jurisdiction. *Id.* at 18–19.

Of relevance when deciding a motion to dismiss the complaint, Debtor points out that Hyde Park's motion does not address the counts in Debtor's complaint regarding turnover of the deeds and other ancillary documents from Mr. Wrobel. *Id.* at 4 n.4. Hyde Park's motion to dismiss only addresses the special escrow funds and the status of Mr. Wrobel as a custodian under the Bankruptcy Code.

In reply, Hyde Park asserts that the escrow funds are not property of the estate. Reply 1, 4, ECF No. 15. Hyde Park argues that what is being determined here is whether Debtor has a claim to payment from the escrow funds and that this is what the District Court already determined. *Id.* at 1–3. Hyde Park also argues that the cause of action does not depend on whether one sues under the Bankruptcy Code or under New York state law—it is the same determination that will be made here that was already made by the District Court. *Id.* at 6.

<u>DISCUSSION</u>

**Jurisdiction**

Before this Court can proceed with a determination on the motion to dismiss, the Court must determine the issue of jurisdiction. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Chief

Judge Loretta A. Preska dated January 31, 2012. Under 28 U.S.C. § 157(b)(2)(a), matters concerning administration of the estate, allowance or disallowance of claims against the estate, and orders to turn over property of the estate are core proceedings. Debtor's complaint alleges sufficient jurisdictional facts to place these proceedings within this Court's core jurisdiction.

Additionally, this matter involves a determination of property of the estate. It is widely held that "matters requiring a declaration of whether certain property comes within § 541's definition of 'property of the estate' are core proceedings." *Koken v. Reliance Grp. Holdings, Inc. (In re Reliance Grp. Holdings, Inc.)*, 273 B.R. 374, 394 (Bankr. E.D. Pa. 2002) (citing *Pension Benefit Guaranty Corp. v. Continental Airlines, Inc. (In re Continental Airlines)*, 138 B.R. 442, 445 (D. Del. 1992); *All American Laundry Service v. Ascher (In re Ascher)*, 128 B.R. 639, 643 (Bankr. N.D. Ill. 1991); *Knopfler v. Schraiber (In re Schraiber)*, 97 B.R. 937, 939–40 (Bankr. N.D. Ill. 1989)); *see also Carrega v. Grubb & Ellis Co. (In re Grubb & Ellis Co.)*, 523 B.R. 423, 440 (S.D.N.Y. 2014).

Hyde Park's arguments that this Court does not have jurisdiction to declare Hyde Park's rights in the special escrow funds or to enter a turnover order depend on the assumption that the special escrow funds are not property of the estate. Hyde Park puts the cart before the horse—a turnover proceeding requires that the property sought to be turned over is, in fact, property of the estate. *In re Brown*, 734 F.2d 119, 124 (2d Cir. 1984); *Yellow Cab Coop. Ass'n v. Mathis (In re Yellow Cab Coop. Ass'n)*, 178 B.R. 265, 269–70 (Bankr. D. Colo. 1995); *In re Redman Oil Co.*, 95 B.R. 516, 522 (Bankr. S.D. Ohio 1988) (citations omitted). Whether property is property of the estate is a question only a Bankruptcy Court can make with full authority.

A determination on whether certain property is property of the bankruptcy estate is not only a core proceeding, it is a proceeding that involves this Court's exclusive jurisdiction. "The

Court has exclusive jurisdiction over all property of the debtor as of the commencement of the case, as well as property of the estate, regardless of where the property is located." *In re Salander O'Reilly Galleries*, 453 B.R. 106, 114 (Bankr. S.D.N.Y. 2011) (citing 28 U.S.C. § 1334(e)).  It follows that a determination of what constitutes property of the estate subject to this Court's exclusive jurisdiction, also belongs to the Bankruptcy Court.  *See In re McGuire*, 2015 Bankr. LEXIS 413, at *33 (Bankr. W.D. Tenn. Jan. 14, 2015); *In re Brock*, 58 B.R. 797, 804 (Bankr. S.D. Ohio 1986); *In re Pruitt*, 401 B.R. 546, 553 (Bankr. D. Conn. 2009).  Hyde Park's motion to dismiss on lack of subject matter jurisdiction is denied.

**Legal Standard on a Motion to Dismiss**

Under Federal Rule of Civil Procedure 8(a), incorporated and made applicable by Federal Rule of Bankruptcy Procedure 7008, to state a claim for relief the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Upon a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), incorporated and made applicable here by Federal Rule of Bankruptcy Procedure 7012, the Court may dismiss any count in the complaint that fails to state a claim for which relief can be granted.

"'[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.'"  *Pearl River Union Free Sch. Dist. v. Duncan*, 56 F. Supp. 3d 339, 353 (S.D.N.Y. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); and then citing *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013)).  From the facts alleged in the complaint, the Court must also "draw[] all reasonable inferences in favor of the plaintiff."  *Koch v. Christie's Int'l Pub. Ltd. Co.*, 699 F.3d 141, 145 (2d Cir. 2012) (citing *Muto v. CBS Corp.*, 668 F.3d 53, 56 (2d Cir. 2012)).

"On a motion to dismiss, the court may consider 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference.'" *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).  "Moreover, 'on a motion to dismiss, a court may consider . . . matters of which judicial notice may be taken, [and] documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Kalyanaram v. Am. Ass'n of Univ. Professors at the N.Y. Inst. of Tech.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  While the Court must accept as true all factual allegations, this is "inapplicable to legal conclusions."  *Id.*

**Res Judicata**

"The doctrine of *res judicata*, or claim preclusion, holds that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980); and then citing *Burgos v.*

*Hopkins*, 14 F.3d 787, 789 (2d Cir.1994)).  The doctrine also provides that "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979) (citations omitted).  The purpose of the doctrine of *res judicata* is to promote finality.  *See Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995) (citations omitted).

"'To determine whether the doctrine of res judicata bars a subsequent action, we consider whether 1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same.'"  *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (quoting *In re Layo*, 460 F.3d 289, 292 (2d Cir. 2006)).  "The burden is on the party seeking to invoke *res judicata* to prove that the doctrine bars the second action." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997) (citing *Thomas v. New York City*, 814 F.Supp. 1139, 1148 (E.D.N.Y.1993)).

"Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *N.L.R.B. v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983) (citing *Tucker v. Arthur Andersen & Co.*, 646 F.2d 721, 726–28 (2d Cir.1981); *Herendeen v. Champion Int'l Corp.*, 525 F.2d 130, 133–34 (2d Cir.1975); Restatement (Second) of Judgments § 24(1) (Am. Law Inst.1982)); *see also Sure-Snap Corp. v. State St. Bank & Trust Co.*, 948 F.2d 869, 874 (2d Cir. 1991).  While New York follows a transactional approach to *res judicata*, *see Buckskin Realty, Inc. v. Windmont Homeowners Ass'n (In re Buckskin Realty, Inc.)*, 2016 Bankr. LEXIS 3458, at *21 (Bankr. E.D.N.Y. Sep. 23, 2016), "[t]o determine the applicability of *res*

Page **12** of 22

*judicata* to the facts before us, we must decide first if the 'cause of action' which the [Debtor]

now seeks to assert is the 'same cause of action' that was asserted in" the prior case.  *Nevada v.*

*United States*, 463 U.S. 110, 130 (1983).

A motion to dismiss under Rule 12(b)(6) may assert that *res judicata* or collateral

estoppel bars any claim for which relief could be granted.  *See, e.g.*, *Day v. Moscow*, 955 F.2d

807, 811 (2d Cir. 1992); *Sassower v. Abrams*, 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993).

"Dismissal based on *res judicata* or collateral estoppel is appropriate where it is clear from the

face of the complaint and from matters of which the Court takes judicial notice that plaintiff's

claims are barred."  *Bd. of Managers of the 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs.*,

652 F. Supp. 2d 463, 472 (S.D.N.Y. 2009) (citing *Houbigant, Inc. v. Dev. Specialists, Inc.*, 229

F. Supp. 2d 208, 220 (S.D.N.Y. 2002)).

Two elements of *res judicata* are not disputed here—the prior District Court and Second

Circuit decisions undoubtedly involved the same parties, and the District Court and Second

Circuit were competent courts of jurisdiction.  The issues here involve whether Debtor is

alleging the same cause of action that was asserted in the prior cases, and whether there was a

final determination on the merits of these same causes of action.  The answer to these questions

must be "no."

Hyde Park argues that *res judicata* applies to bar the Debtor's complaint on the grounds

that both the District Court and the Second Circuit "have already determined that Debtor has no

claim to the Escrow Funds."  Mot. Dismiss 8.  Hyde Park argues that DeFlora I and DeFlora II

involved precisely the same issues, the same transactions, and the same evidence that will be

presented here in this adversary proceeding.  *Id.* at 9.  In Hyde Parks' reply, Hyde Park insists

that the identity of the causes of action depend on whether the same series of factual transactions

are being alleged.  Reply 6.  Hyde Park asserts that both the District Court and the Second

Circuit already determined neither party has an interest in the special escrow funds, and that the

same determination that was sought there is being sought here under Bankruptcy Code § 541.  *Id.*

Hyde Park misstates the Second Circuit's holding on the parties' respective interests in

the escrow funds.  The Second Circuit explicitly held that there had been no determination of the

parties' interests in the special escrow funds, stating that the issue "remained unresolved."  *See*

*DeFlora*, 2017 U.S. App. LEXIS 7823, at *4.  Hyde Park also fails to distinguish between a

cause of action that can only be brought pursuant to the Bankruptcy Code and a claim for breach

of contract arising out of state law.  A cause of action based on New York law for breach of

contract cannot be the same as a cause of action based on the Bankruptcy Code for turnover of

property of the estate or a determination of property of the estate, nor could either cause of action

have been raised in the District Court proceedings.  *See, e.g.*, *In re Quade*, 482 B.R. 217, 235

(Bankr. N.D. Ill. 2012) (finding that a debtor could not waive bankruptcy exemptions in pre-

petition state court proceedings); *Billing Res. v. FTC (In re Billing Res.)*, Nos. 07-52890, 07-

5156, 2007 Bankr. LEXIS 3789, at *79–80 (Bankr. N.D. Cal. Nov. 2, 2007).

In DeFlora I, Debtor asserted a breach of contract claim against Hyde Park.  Mot.

Dismiss Ex. 2 at 7–8.  Debtor sought a declaratory judgment that Hyde Park had breached the

contract, Debtor was entitled to recover the special escrow funds and that Hyde Park was not. *Id.*

at 1.  Hyde Park counterclaimed, seeking a declaratory judgment that Debtor had breached the

contract and Hyde Park was entitled to the special escrow funds.  *Id.* at 1–2.  Both causes of

action stemmed from a breach of contract claim.

In DeFlora I, the District Court determined that the alleged breaching conduct occurred

no later than 1999, as the District Court found the Debtor's complaint "addresses events that

occurred in 1999 and mentions no conduct occurring thereafter." *Id.* at 7.  Debtor's DeFlora I

suit had been filed on September 22, 2008, well over six years later.  Based on either the catchall

provision in New York Civil Practice Law and Rules § 213(1) or the specific statute of

limitations provided for a breach of contract under § 213(2), the District Court found that

"[Debtor's] breach of contract claim is governed by the six-year statute of limitations." *Id.*

(citing N.Y. C.P.L.R. § 213(2)).  The District Court then determined that "[s]ince the declaratory

judgment causes of action in [Debtor's] Complaint and [Hyde Park's] Counterclaim arise from

the parties' contractual relationship, they too are governed by the six-year state of limitations.

*Id.* (citations omitted).  The District Court then held that the statute of limitations "bars both

[Debtor's] claims and [Hyde Park's] counterclaim." *Id.*  The ruling was limited to the right to

sue on a breach of contract claim, where the breaching activity occurred more than six years

before the complaint was filed, based on the statute of limitations in the New York Civil Practice

Law and Rules.

In DeFlora II, Debtor alleged another breach of contract claim against Hyde Park based

on new developments.  This time, Debtor argued a new breach of contract theory to try and reach

the special escrow funds based on the escrow letters sent to Mr. Wrobel.  Mot. Dismiss Ex. 5 at

7:19–8:20.  The District Court dismissed Debtor's new breach of contract theory, finding that the

escrow letters did not provide a plausible basis to conclude the parties intended to settle the

dispute over the fair market value of the parcels sold in 1999 after all the land parcels had been

sold.  *Id.* at 22:22–24:8  In the alternative, assuming no new contract was created, the District

Court found that the issue was *res judicata*, as the District Court already determined a contract

claim based on the same allegedly breaching behavior was time-barred.  *Id.* at 24:9–14.

*Res judicata* will not bar an entirely separate cause of action, where there was no final determination on the merits.  The District Court determined that the parties' breach of contract claims are barred by New York state's statute of limitations law.  The District Court did not determine whether either party had a property interest in the escrow funds.  While the District Court determined that both Debtor and Hyde Park's contract claims were barred, that was not a determination of an interest in property.  As the Second Circuit explicitly said on appeal in DeFlora II, "Hyde Park attempts [to] distinguish 'claims' on the funds (it concedes that DeFlora has none) from an 'interest' in them; but the nature of the parties' respective 'interests' in the escrow funds (and the extent to which they have any) is the very thing that has been disputed in this duplicative litigation, and remains unresolved."  *DeFlora*, 2017 U.S. App. LEXIS 7823, at *4.  Clearly then, per the Second Circuit's ruling, there has been no determination on the merits regarding the parties' respective interests in the escrow funds.

Although the contract claim based on the alleged breach of forced escrow in 1999 was time-barred, that does not extinguish the parties' respective interests, whatever they may be, in the escrow funds.  The District Court acknowledged the distinction between a claim for payment and an interest in property when it noted that "the parties didn't intend that money to sit there [in the escrow account] forever until the end of time.  They intended it to be disposed of."  Mot. Dismiss Ex. 5 at 23:10–12, ECF No. 12-6.  Even the District Court acknowledged the parties intended to dispose of the escrow funds in some manner, implicitly recognizing that some interest in the property remained.  The parties had simply waited too long to resolve that dispute in District Court under New York law on a breach of contract claim.  The District Court further urged the parties to negotiate a release of the funds between themselves.  Mot. Dismiss Ex. 4 at

27:17–25.  The time-barred nature of the contract claim does not extinguish rights in the

property, otherwise neither party would be able to negotiate any release of the funds.

Even though the adversary proceeding before this Court may involve some overlapping

facts that were alleged in the parties' breach of contract claims in the District Court, the causes of

action are not the same and this proceeding for turnover of property of the estate and for a

determination of Hyde Park's bankruptcy claims could not have been raised in the District Court.

The issue before this Court involves a turnover proceeding under 11 U.S.C. § 543.  Under

Bankruptcy Code § 543(a),

> [a] custodian with knowledge of the commencement of a [bankruptcy] case . . .
> concerning the debtor may not make any disbursement from, or take any action in
> the administration of, property of the debtor, proceeds, product, offspring, rents,
> or profits of such property, or property of the estate, in the possession, custody, or
> control of such custodian, except such action as is necessary to preserve such
> property.

The Bankruptcy Code further directs that a custodian shall

> (1)  deliver to the trustee any property of the debtor held by or transferred to such
> custodian, or proceeds, product, offspring, rents, or profits of such property, that
> is in such custodian's possession, custody, or control on the date that such
> custodian acquires knowledge of the commencement of the case; and
> (2)  file an accounting of any property of the debtor, or proceeds, product,
> offspring, rents, or profits of such property, that, at any time, came into the
> possession, custody, or control of such custodian.

Compliance with § 543 is not optional.  Property of the bankruptcy estate held by a custodian

must be turned over to the estate.  Further, "the default position under the Bankruptcy Code is

that a debtor is entitled to custody of its property, and 11 U.S.C. § 543 directs custodians of

estate property to turnover such property to the Trustee."  *In re Bullitt Utilities, Inc.*, 558 B.R.

173, 178 (Bankr. W.D. Ky. 2016) (footnote omitted).

Here, the facts that must be alleged to successfully litigate whether something is property of the bankruptcy estate, and for turnover to the bankruptcy estate are different than the facts alleged to show breach of contract.  For example, Hyde Park's motion to dismiss alleges that Mr. Wrobel is not a custodian and the special escrow funds are not property of the estate.  Under Bankruptcy Code § 541, property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case . . . ."  All of the Debtor's interests in property become property of the estate.  While neither Hyde Park nor the Debtor can bring a breach of contract claim based on the Debtor's deposit of $207,116 into the escrow account with Mr. Wrobel, those facts are not determinative of the parties' rights to those special escrow funds.  Taking judicial notice of the proceedings held before the District Court and the Second Circuit, this Court cannot see any clear discussion of facts that would determine the interests of the parties in the special escrow funds.

Further, a determination of property of the estate could not have been made by the District Court or the Second Circuit prior to Debtor's filing for bankruptcy.  Such a determination is not only a separate cause of action under Bankruptcy Code § 541 and § 543, it is also a determination within the exclusive province of the Bankruptcy Court.  *See In re McGuire*, 2015 Bankr. LEXIS 413, at *33 (Bankr. W.D. Tenn. Jan. 14, 2015); *In re Brock*, 58 B.R. 797, 804 (Bankr. S.D. Ohio 1986); *In re Pruitt*, 401 B.R. 546, 553 (Bankr. D. Conn. 2009).  The District Court could not have made a determination on what constituted property of the bankruptcy estate before the bankruptcy case was even filed.  Nor could the District Court have made such a determination in a diversity case devoid of any basis in the Bankruptcy Code.

The legal cause of action for turnover under the Bankruptcy Code is also separate from a breach of contract claim under New York law or an action for turnover to enforce an award of

attorneys' fees under New York law.  The Bankruptcy Code creates a separate cause of action

that is only available to a Debtor in bankruptcy, and is different from a cause of action created

under state law.  *See In re Prof'l Coatings (n.A.)*, 210 B.R. 66, 78 (Bankr. E.D. Va. 1997).  The

elements of the pleading in the District Court were those for a breach of contract claim and, in

Hyde Park's motion to enforce the award of attorneys' fees, for turnover under the New York

CPLR §§ 5225 and 5227.  These are separate causes of action, with distinct elements from a

turnover proceeding under the Bankruptcy Code.  The claim for turnover of property of the estate

and the requisite determination of property of the estate was not decided by the District Court or

the Second Circuit.

On a motion to dismiss, the Court must treat the facts alleged in the complaint as true and

draw all inferences in the plaintiff's favor.  *Koch v. Christie's Int'l Pub. Ltd. Co.*, 699 F.3d 141,

145 (2d Cir. 2012) (citing *Muto v. CBS Corp.*, 668 F.3d 53, 56 (2d Cir. 2012)).  On the face of

the facts alleged in the complaint, and taking judicial notice of the District Court and Second

Circuit proceedings, *res judicata* does not bar litigation of the counts alleged in Debtor's

complaint.  The facts that must be alleged here to succeed in a turnover proceeding under

Bankruptcy Code § 543 and to determine the nature and validity of Hyde Park's bankruptcy

claims will be different than those alleged in the District Court to show breach of contract.

While the District Court would have been required to consider the terms of the contract and the

nature of the alleged breach, here Debtor must, at the very least, prove to this Court that Mr.

Wrobel is a custodian under the definition provided in the Bankruptcy Code and that the escrow

funds are property of the estate subject to turnover.  The Second Circuit explicitly found that the

interests in the special escrow fund remained unresolved.  There has been no final determination

on this issue.  Moreover, these Bankruptcy causes of action could not have been raised in the District Court.  *Res judicata* does not bar the Debtor's complaint.

**Judicial Estoppel**

"Judicial estoppel is an equitable doctrine that provides that, '[w]here a party assumes a certain position in a legal proceeding, and succeeds in that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" *Fernandez v. Windmill Distrib. Co.*, 2016 U.S. Dist. LEXIS 109330, at *7 (S.D.N.Y. Aug. 17, 2016) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).  "A party invoking [the judicial estoppel] doctrine 'must show that (1) the party against whom judicial estoppel is being asserted advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner.'" *United States v. Hussein*, 178 F.3d 125, 130 (2d Cir. 1999) (quoting *AXA Marine & Aviation Ins. (U.K.) Ltd. v. Seajet Indus. Inc.*, 84 F.3d 622, 628 (2d Cir. 1996)).

Judicial estoppel applies to inconsistent factual positions, not alternative legal theories of the case.  The Supreme Court has held that judicial estoppel will not bar alternative legal theories.  In discussing why judicial estoppel was not appropriate at the summary judgment stage in the case before it, the Supreme Court explained that

> [o]ur ordinary rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to "set forth two or more statements of a claim or defense alternately or hypothetically," and to "state as many separate claims or defenses as the party has regardless of consistency."

*Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999) (quoting Fed. Rule Civ. Proc. 8(e)(2)).  The Supreme Court noted that the majority of cases applying judicial estoppel involve

purely factual contradictions, although the Supreme Court declined to rule on the law of judicial

estoppel at that time.  *See id.* at 807.  Instead, where the situation involves a legal conclusion, the

lower courts were within their authority to insist on an explanation of any inconsistent factual

statements that might go to the necessary elements of the claim.  *Id.*  The inconsistent statements

must be factual statements that affect necessary legal elements of a claim.  In another case before

the Supreme Court regarding the issue of judicial estoppel, the Supreme Court spelled out a

variety of factors to consider in determining the applicability of judicial estoppel.  The Supreme

Court stated that "[a]dditional considerations may inform the doctrine's application in specific

factual contexts."  *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001).

"The courts invoke judicial estoppel as a means to 'preserve the sanctity of the oath' or to

'protect judicial integrity by avoiding the risk of inconsistent results in two proceedings.'"

*Simon v. Safelite Glass Corp.*, 128 F.3d 68, 71 (2d Cir. 1997).  The Second Circuit has held that

"the doctrine of judicial estoppel [is limited] to situations where the risk of inconsistent results

with its impact on judicial integrity is certain.'"  *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138,

148 (2d Cir. 2005) (quoting *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72 (2d Cir. 1997)).

On a motion to dismiss, the Court must assume all factual allegations to be true and draw

all factual inferences in favor of the plaintiff.  *Pearl River Union Free Sch. Dist. v. Duncan*, 56

F. Supp. 3d 339, 353 (S.D.N.Y. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); and

then citing *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *Aegis Ins. Servs., Inc. v. 7 World

Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013)); *see also Koch v. Christie's Int'l Pub. Ltd. Co.*, 699

F.3d 141, 145 (2d Cir. 2012) (citing *Muto v. CBS Corp.*, 668 F.3d 53, 56 (2d Cir. 2012)).  A

judicial estoppel argument requires the Court to find that the Debtor asserted facts in the prior

proceeding that are inconsistent with the facts alleged in the complaint before the Court.  Hyde

Park's "judicial estoppel argument, therefore, fails to appreciate the standard which governs its motion to dismiss . . . ." *Prince v. Suffolk Cty. Dep't of Health Servs.*, 1996 U.S. Dist. LEXIS 9773, at *17 (S.D.N.Y. July 11, 1996). Hyde Park urges this Court to find that the Debtor is now asserting it has a "claim" to the special escrow funds, when the Debtor allegedly argued the opposite to the Second Circuit, and the Second Circuit adopted that theory. Even assuming Debtor's arguments constitute factual inconsistencies, this Court is obligated to take all facts alleged in the complaint as true in a motion to dismiss.

More importantly, Hyde Park's judicial estoppel argument is not based on any factual inconsistencies asserted by the Debtor. Instead, Hyde Park's judicial estoppel argument rests on Debtor's allegedly inconsistent legal theory of the case, *i.e.*, that Debtor and Hyde Park have no breach of contract claim with respect to the special escrow funds, and yet the special escrow funds are still property of the estate. Even if arguing there is no breach of contract claim is inconsistent with the position Debtor advances now, these are legal positions, not factual. Judicial estoppel is inapplicable here.

### CONCLUSION AND ORDER

Debtor's complaint adequately alleges facts sufficient to state a claim for relief before this Bankruptcy Court. Upon Hyde Park's motion to dismiss, Debtor's opposition to the motion, Hyde Park's reply, and for the foregoing reasons, it is now

**ORDERED** that Hyde Park's motion to dismiss is DENIED.



**Dated: July 19, 2017**
**Poughkeepsie, New York**

/s/ **Cecelia G. Morris**
_____
**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**