FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
:          Chapter 11
In re:                                                      :
:          Case No. 17-35318 (CGM)
DeFlora Lake Development Associates, Inc.,    :
:
Debtor.          :
:
-------------------------------------------------------------X
DeFlora Lake Development Associates, Inc.,    :
:          Adv. No. 17-09006 (CGM)
Plaintiff,    :
:
v.          :
:
Hyde Park, a Wisconsin Limited Partnership    :
and Lewis D. Wrobel,[1]                                 :
Defendant(s).  :
-------------------------------------------------------------X

**MEMORANDUM DECISION FURTHER EXPLAINING THIS COURT'S JANUARY 10, 2020 ORDER**

**A P P E A R A N C E S :**

Elizabeth A. Haas
Elizabeth A. Haas Attorney at Law
P.O. Box 607
Tallman, NY 10982
*Attorney for Plaintiff, DeFlora Lake Development Associates, Inc.*

Leonard Benowich
Benowich Law, LLP
1025 Westchester Avenue
White Plains, NY 10604
*Attorney for Defendant, Hyde Park, a Wisconsin Limited Partnership*

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

---

[1]  The parties agree that Mr. Wrobel is a nominal, non-interested party in this litigation and is only named as a defendant in his capacity as escrow agent.

The Court originally held a trial in this adversary proceeding in May 2018. Following trial, the Court entered a five-page decision and order on January 10, 2020. Hyde Park appealed. The District Court reviewed that decision and order and remanded the case for more explanation from this Court on how it came to its determinations.

The trial determined whether monies and deeds held in "escrow" are property of the estate. In so determining, the Court had to address issues that arose from a contested sale of property by DeFlora Lake Development Associates, Inc., ("DeFlora Lake" or "Debtor") and Hyde Park, a Wisconsin Limited Partnership ("Hyde Park"). A contract governed the division of proceeds of the sale between DeFlora Lake and Hyde Park; a prior District Court case[2] determined that those contract claims were barred by the statute of limitations. That determination was upheld by the United States Court of Appeals for the Second Circuit.[3] Ultimately, and for further reasons set forth in this Memorandum Decision, the Court finds that the Wrobel Funds (as defined herein) held in the name of DeFlora Lake are property of the estate and must be turned over to Debtor and that the deeds are property of the estate subject to the escrow agreement regarding them.

### Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate) and (E) (orders to turnover property of the estate).

---

[2] *DeFlora Lake Dev. Assocs., Inc. v. Hyde Park, LP*, 08 CV 8155. JX-15, ECF No. 78-16.
[3] *DeFlora Lake Dev. Assocs., Inc. v. Hyde Park*, 689 Fed. App'x 99 (2d Cir. May 3, 2017) (summary order).

## Background

In 1980, Caesar DeFlora ("Caesar")[4] and Hyde Park entered into an agreement ("Land Contract") for the purchase and sale of seven parcels of real property. JPTO ¶ 15, ECF No. 32.[5] The parcels, referred to as parcels A through G, consisted of 487 acres of land (the "Property"), including a lake, in Dutchess County, New York. *Id.*; *see also* JX-2[6] (Amendment No. 2). The Land Contract called for a total purchase price of $3.9 million to be paid over time with interest. JX-1, ¶ 1 (Land Contract). According to the Land Contract, the Property was to be used for the construction of 3,200 residential dwelling units. JX-1, ¶ 7.

Caesar and Hyde Park modified portions of the Land Contract four times in ten years, including by changing the purchase price and repayment period, creating lake rights for future owners, and agreeing to sell and divide the proceeds of the Property. *See* JXs-2–4 (Amendment Nos. 1–4). By December 31, 1990, Caesar and Hyde Park had not yet developed the Property. JX-5, at 1. On December 31, 1995, fifteen years after it was originally signed, the Land Contract was amended for the fifth time ("Amendment Five"). JX-6 (Amend. No. 5).

Sometime between the fourth and fifth amendment, Caesar "transferred all of his right, title and interest" in the Property, which is subject to the Land Contract, "as well as all his right, title and interest in the Land Contract" to DeFlora Lake. *Id.* at 1. Amendment Five to the Land Contract was made and entered into by and between DeFlora Lake and Hyde Park. *Id.* This is the most recent amendment to the Land Contract. JPTO ¶ 17. Amendment Five purported to resolve various litigation and disputes that had arisen between Hyde Park and DeFlora Lake. JX-

---

[4] Aside from being the original owner of the property at issue in this case and the predecessor to DeFlora Lake's interest in the property, Caesar DeFlora is not otherwise involved in this dispute or related to DeFlora Lake. *See* JX-6, ¶ 22 ("Caesar DeFlora has no further interest . . . with respect to the Land Contract . . . ."). The Court will refer to him as "Caesar" to avoid confusion for the reader and intends no disrespect in doing so.

[5] Unless otherwise noted, ECF Numbers refer to the docket of 17-09006-CGM.

[6] "JX" refers to the parties' joint exhibits, which can be found on the docket of the adversary proceeding at ECF No. 78.

6, at 2. As such, Amendment Five sets forth a detailed process for selling parcels of the Property and division of proceeds. JX-6.

According to Amendment Five, DeFlora Lake and Hyde Park could each obtain a purchaser for any and all parcels of the Property. JX-6, ¶ 8.A. Monies generated from the sale of Property would be applied as a "credit" towards the debt owed by Hyde Park to DeFlora Lake. *Id.* As of December 31, 1995, the date on which Amendment Five was executed, Hyde Park, as purchaser, owed Debtor, as seller, $8,404,989.43 ("Total Obligation") for all obligations under the Land Contract, and would repay that debt "solely from the proceeds of the management of the Property, and from sale(s) of the Property and from other credits and reductions described herein." JPTO ¶ 17 (cleaned up); *see also* JX-6, ¶ 5. Amendment Five also provides that the first $1,800,000.00 in proceeds (as defined therein) from the sale of Property (the "Threshold") would be paid to the DeFlora Lake, and thereafter "[Hyde Park] shall retain an amount equal to fifty (50%) percent of any net sale price and the remaining balance shall be paid to [DeFlora], as a continued reduction of [Hyde Park's] obligation under paragraph 4 herein. . . . Any amounts due [Hyde Park] when gross sale proceeds and credits are greater than $1,800,000 shall be paid in cash by [DeFlora] to [Hyde Park]." JPTO ¶ 18; JX-6, ¶ 12.

To facilitate the sale of Property, DeFlora Lake and Hyde Park were required, under the terms of Amendment Five, to sign deeds and other instruments to effect conveyance of each parcel at a future sale. JX-6, ¶ 10. The deeds were placed in escrow with Lewis Wrobel ("Wrobel"), who was named as the "Deed Escrow Agent" in Amendment Five. JX-6, ¶¶ 10, 18. The deeds were to be released by Wrobel upon written instruction of either DeFlora Lake or both, Hyde Park and DeFlora Lake. JX-6, ¶¶ 10; 18. An ambiguity discussed in more detail below.

Despite the parties' intentions to prevent disagreements over the Property through the creation of Amendment Five, in 1999, a dispute arose between DeFlora Lake and Hyde Park regarding the sale of parcels D, E, and G ( "Parcels D, E, & G"). On March 10, 1999, DeFlora Lake gave notice to Hyde Park that it intended to sell Parcels D, E, & G for $900,000. JPTO ¶ 21. In communications between the parties extending from March to September 1999, Hyde Park objected to the proposed sale, stating that the sale price was unreasonably low and suggesting that Parcels D, E, & G were worth at least $1,750,000. *Id.* In September of 1999, Hyde Park stated that it would not object to delivering its quitclaim deeds to allow Parcels D, E, & G to be sold if $207,116 were delivered to and held by Wrobel. *Id.* at ¶ 22. DeFlora Lake acquiesced "under protest" and the funds were delivered to Wrobel ("Wrobel Funds") on September 23, 1999. *Id.*

Wrobel deposited those funds, the Wrobel Funds, into two accounts: (a) DeFlora Lake development Assoc Ltd/Lewis D Wrobel Attorney, Account No. XXXXXXXX06 ("DeFlora Account"), and (b) Hyde Park/Lewis D Wrobel Attorney, Account No. XXXXXX64 ("Hyde Park Account").

Paragraph 8.C of Amendment Five contained a procedure that the parties were to follow should they not agree on the details of the sale of any parcel of the Property. JX-6, ¶ 8.C. In that event, DeFlora Lake was permitted to proceed with the closing of the sale and Hyde Park would be given a "credit" against both the Threshold and Total Obligation owed to DeFlora Lake. JX-6, ¶ 8.C(i). If the parties could not agree on the amount of the credit, Amendment Five set out a procedure to determine the amount of the credit to be given. JX-6, ¶ 8.C(ii).

According to paragraph 8.C(ii), the credit would be given in an amount equal to the "Fair Market Value" (defined therein) of the parcels sold, as determined by an "MAI[7] Appraiser." *Id.* Each party was to obtain its own appraisal of the parcels sold and if they still could not agree on the Fair Market Value a third appraisal would be obtained to determine the Fair Market Value for purposes of valuing Hyde Park's credit. *Id.* Neither Debtor nor Hyde Park obtained an appraisal or took any steps with respect to the Wrobel Funds pursuant to Paragraph 8.C(ii) of Amendment Five. JPTO ¶ 24.

On September 6, 2005, DeFlora Lake commenced an action against Hyde Park in the United States District Court for the District of New Jersey, which was dismissed by order dated March 29, 2006 for failure to effect service on Hyde Park. JPTO ¶ 25. On February 26, 2007, DeFlora Lake commenced a second action against Hyde Park, also in the United States District Court for the District of New Jersey, which was dismissed by an opinion and order dated October 23, 2007, for lack of personal jurisdiction. *Id.*

In September 2008, DeFlora Lake commenced the following action in the United States District Court for the Southern District of New York ("District Court"): *DeFlora Lake Development Associates, Inc. v. Hyde Park, LP and Lewis Wrobel, as Deed Escrow Agent*, 08 CV 8155 ("*DeFlora I*"). JPTO ¶ 27. In a decision and order dated March 30, 2011, Judge Seibel held that DeFlora Lake's claims and Hyde Park's counterclaims to the Wrobel Funds were time-barred under New York's six-year Statute of Limitations. JPTO ¶ 28. Neither party appealed that determination. JPTO ¶ 29.

Subsequently, on July 11, 2013, DeFlora Lake commenced a second action in the United States District Court for the Southern District of New York: *DeFlora Lake Development Associates, Inc. v. Hyde Park, LP and Lewis Wrobel, as Deed Escrow Agent*, 13 CV 04811

---

[7] "Member, Appraisal Institute."

("*DeFlora II*").  JPTO ¶ 31.  Judge Seibel ultimately dismissed *DeFlora II* and granted Hyde

Park's applications for prevailing party attorneys' fees under the Land Contract.  JPTO ¶ 32.[8]

DeFlora Lake appealed the first attorneys' fees award and the United States Court of Appeals for

the Second Circuit ("Second Circuit") affirmed.[9]  JPTO ¶ 34.

   Hyde Park then commenced enforcement proceedings in *DeFlora II* seeking a turnover

order with respect to DeFlora Lake's interest, if any, in the Wrobel Funds ("Turnover Motion").

JPTO ¶ 35.  The District Court denied Hyde Park's Turnover Motion and the Second Circuit

affirmed the dismissal and stated:

> Litigation to determine which (if either) of the parties to this case is entitled to the
> escrow funds has been dismissed and all of their claims to those funds have been
> ruled time-barred. Hyde Park attempts [to] distinguish "claims" on the funds (it
> concedes that DeFlora has none) from an "interest" in them; but the nature of the
> parties' respective "interests" in the escrow funds (and the extent to which they
> have any) is the very thing that has been disputed in this duplicative litigation, and
> remains unresolved.  The district court did not abuse its discretion by refusing to
> order those funds turned over.

JPTO ¶¶ 36-37.

   DeFlora Lake filed for bankruptcy under chapter 11 on March 2, 2017.  Vol Pet., 17-

35318-cgm, ECF No. 1. This adversary proceeding was filed the next day, on March 3, 2017.

Compl., ECF No. 1.  Via this adversary proceeding, DeFlora Lake is seeking a determination that

the Wrobel Funds are property of the estate under 11 U.S.C. § 541 and must be turned over to

DeFlora Lake under § 543 of the Bankruptcy Code.  Am. Compl. ¶ 40, ECF No. 8.  Hyde Park

moved to dismiss this adversary proceeding arguing, among other things, that DeFlora Lake's

claims to the Wrobel Funds are time barred and DeFlora Lake was barred from asserting a claim

---

[8] "The Fee Judgments are liens against the Debtor's remaining real property: Parcel B and Dogwood Lane." JPTO ¶ 33.

[9] DeFlora Lake appealed the District Court's determination that the non-recourse nature of the Land Contract prohibited a setoff of attorneys' fees against the special escrow fund. Hyde Park appealed the denial of that part of the motion seeking turnover of the special escrow funds. In separate summary orders, the Second Circuit affirmed the District Court's rulings on both issues. *DeFlora Lake Dev. Assocs., Inc. v. Hyde Park*, 689 Fed. App'x 99 (2d Cir. May 3, 2017) (summary order).

to the Wrobel Funds based on the prior District Court and Second Circuit decisions. *See* Mtn.

Dismiss, ECF No. 12, ex.13 (memo. of law). This Court recognized that the Wrobel Funds may

be property of the estate, despite the fact that the parties were unable to enforce their contract

claims against them. *See* Memo. Dec., ECF No. 18.[10] The Court denied the motion to dismiss

and allowed this proceeding to continue. *Id.*

Ultimately, the Court held a trial on May 9–10, 2018. *See* 5/9/18 Tr. Trans., ECF No. 49;

5/10/18 Tr. Trans., ECF No. 40. At trial, the Court was asked to determine the following issues:

1) that DeFlora Lake does, or does not, have an interest in the Wrobel Funds and a
   determination of the nature of any such interest;

2) that DeFlora Lake does, or does not have, an interest in the deeds and a determination of
   the nature of any such interest;

3) that the Wrobel Funds are, or are not, property of the estate;

4) that the deeds are, or are not, property of the estate;

5) that Wrobel is, or is not, a custodian within the meaning of 11 U.S.C. § 101(11);

6) that DeFlora Lake is, or is not, entitled to a turnover of the Wrobel Funds and/or the
   Deeds, pursuant to 11 U.S.C. § 543; and

7) Hyde Park also seeks dismissal of the first amended complaint.

JPTO ¶¶ 8-12.

At the close of Plaintiff's case, Hyde Park moved to have the case dismissed. 5/9/18 Tr.

Trans. at 214: 1–5, ECF No. 49. On the record of the May 9, 2018 trial, the Court denied the

motion. *Id.* at 222:23–223:11.

---

[10] *DeFlora Lake v. Hyde Park (In re DeFlora Lake)*, 571 B.R. 587 (Bankr. S.D.N.Y. 2017) ("The legal cause of
action for turnover under the Bankruptcy Code is also separate from a breach of contract claim under New York law
or an action for turnover to enforce an award of attorneys' fees under New York law. The Bankruptcy Code creates
a separate cause of action that is only available to a Debtor in bankruptcy, and is different from a cause of action
created under state law.").

At the close of trial, the Court asked the parties to obtain MAI appraisals of Parcels D, E, & G and to come back for closing argument after the appraisals were obtained. *See* 5/10/18 Tr. Trans. at 118–28, ECF No. 40. The parties filed appraisals in September 2018. DFL Appraisal, ECF No. 45; HP Appraisal, ECF No. 46. The parties then requested adjournments as they attempted to negotiate a resolution. When the parties could not reach an agreement on Fair Market Value based upon the two MAI appraisals, the Court ordered that they obtain the third MAI appraisal, as Amendment Five contemplated. That appraisal was filed on November 26, 2019. 3rd Appraisal, ECF No. 71.

The appraisal submitted by DeFlora Lake, prepared by Michael J. Bernholz, of Hudson Valley Appraisal Corp., appraised the Fair Market Value of Parcels D, E, & G at $1,530,000. ECF No. 45-1. The appraisal submitted by Hyde Park, prepared by Gregory Faughnan, of Faughnan Appraisal, LLC, appraised the Fair Market Value of Parcels D, E, & G at $3,100,000. ECF No. 46-1. At the Court's direction, the parties engaged Mr. Al DeKrey of McGrath & Company, Inc., who rendered his report and appraised the Fair Market Value of Parcels D, E, & G as $2,520,000. ECF No. 71-1.

On December 2, 2019, the Court heard oral argument on the appraisals and issued a decision and order resolving the issues from the May 2018 trial on January 10, 2020. *See* 12/3/19 Hr'g Tr., ECF No. 73; *see also* Dec. & Or., ECF No. 74. Hyde Park appealed this Court's decision and order. Ntc. Appeal, ECF No. 75. The District Court found that this Court "did not adequately explain its ruling," and remanded the case "for further proceedings, if necessary, and for further explanation of its reasoning with respect to the aforementioned issues." *See* Dist. Ct. Or. at 8, 11, ECF No. 85.

The Court acknowledges that its January 10, 2020 decision and order was not detailed enough to adequately address the issues determined at trial. In preparing to write this decision, the Court listened to the recording of the two-day trial in its entirety and reviewed the evidence admitted at trial. It now seeks to bolster its January 10, 2020 order with this decision.

## Discussion

### 1. Whether DeFlora Lake does, or does not, have an interest in the Wrobel Funds and Whether the Wrobel Funds are Property of the Estate?

Although the Joint Pre-Trial Order lists the issue of whether DeFlora Lake has an interest in the Wrobel Funds separately from whether the Wrobel Funds are property of the estate, the inquiry is the same. "Property of the estate" is defined under the Bankruptcy Code as "all legal and equitable interests" of the debtor, "wherever located and by whomever held." 11 U.S.C. § 541(a). "Whether the debtor has a legal or equitable interest in property such that it becomes 'property of the estate' under section 541 is determined by applicable state law." *Musso v. Ostashko*, 468 F.3d 99, 105 (2d Cir. 2006) (citing *Butner v. United States*, 440 U.S. 48, 54 (1979)). "Stated differently, federal bankruptcy law determines whether a certain interest—for example, an interest in real property, a contractual right or a cause of action—is the type of interest that can, under certain circumstances, qualify as property of the estate, and non-bankruptcy law (usually state law) determines whether that interest is such that it *does* in fact qualify as property of the estate." *Slater v. Town of Albion (In re Albion Disposal, Inc.)*, 217 B.R. 394, 402–03 (W.D.N.Y. 1997) (citing *Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1101 (2d Cir.1990)). "Any property of the debtor upon which a judgment creditor might obtain a lien under state law flows to the bankruptcy estate." *See id.*; 11 U.S.C. § 544(a)(1).

The District Court has already determined that whatever contract rights DeFlora Lake and Hyde Park might have had in the Wrobel Funds are barred under New York's six-year statute of limitations.[11]  JPTO ¶ 28.  Thus, this Court was tasked with determining what non-contractual, legal or equitable rights, if any, DeFlora Lake has to the Wrobel Funds.  According to testimony at trial, the parties intended to place the Wrobel Funds into an "escrow account."

**a. Were the Wrobel Funds held in escrow?**

"In determining whether assets purportedly held in escrow are property of the estate, many courts begin with the threshold analysis of whether the arrangement presented to the court is in fact a true escrow." 5 Collier on Bankruptcy ¶ 541.09 (Alan N. Resnick & Henry J. Sommers eds., 16th ed.).  Under New York law, an escrow transaction exists when there is (i) an agreement (formal or nonformal) covering the subject matter and delivery of the same, (ii) a third party depositary, (iii) delivery of the subject matter to a third party conditioned upon the performance of some act or the happening of the event, and (iv) relinquishment by the promisor. *Nat'l Union Fire Ins. Co. Pittsburgh v. Proskauer Rose Goetz & Mendelsohn*, 634 N.Y.S.2d 609, 614 (N.Y. Sup. Ct. 1994).  While the deposit of property placed in escrow creates in the grantee an equitable interest that vests upon the performance of a condition or event, the grantor may also retain an equitable interest.  *TTS, Inc. v. Citibank, N.A. (In re TTS, Inc.)*, 158 B.R. 583, 586 (D. Del. Mar. 16, 1993); *In re Pan Trading Corp.*, 125 B.R. 869, 878 (Bankr. S.D.N.Y. 1991) *citing Press v. Marvalan Indus. Inc.*, 422 F. Supp. 346, 349 (S.D.N.Y. 1976) ("The grantor retains a right to the funds and incidents of ownership until the conditions of the escrow agreement are fulfilled.").

---

[11] In bankruptcy court, claims that would be barred under state law statutes of limitations are not necessarily also barred in bankruptcy court. *See Midland Funding, LLC v. Johnson*, __ U.S. __ , 137 S. Ct. 1407, 1415–16 (2017) ("[F]iling (in a Chapter 13 bankruptcy proceeding) a proof of claim that is obviously time barred is not a false, deceptive, misleading, unfair, or unconscionable debt collection practice within the meaning of the Fair Debt Collection Practices Act.").

Under New York law, no formal or written agreement is required to create an escrow; however, delivery and retention by a third party until the occurrence of a contingency or performance of a condition is necessary. *Shron v. M & G Promo Service, Ltd. (In re Anthony Sicari, Inc.)*, 144 B.R. 656, 660 (Bankr. S.D.N.Y. 1992).

At trial, the parties consistently testified that Wrobel was holding the Wrobel Funds "in escrow." As evidence of the escrow agreement, the parties submitted a series of letters as joint exhibits. *See* JX–12–JX-14. The first letter is from Hyde Park's attorney to Wrobel and it states: "you are hereby authorized to deliver the three (3) quit claim deeds of Hyde Park with respect to parcels D, E and G . . . on condition that you receive the sum of $207,116.00 in good funds upon delivery, to be placed in your escrow account as deed escrow agent." JX-12. The second letter is from Kurt Johnson, on behalf of DeFlora Lake, stating: "Under protest you received $207,116.00 to be held in escrow. You will place that portion of the closing proceeds into an interest bearing account." JX-13. The final letter is from Wrobel to representatives of the parties stating, in relevant part:

> At the closing I picked up $207,116.00. These funds were immediately deposited into my attorney escrow account. Copies of the checks and bank deposits are enclosed. Both [Hyde Park] and [DeFlora Lake] have indicated that they would like the funds to be placed in an interest bearing account. I suggest that I open two separate interest bearing accounts as escrow agent. One will bear the tax identification number of De[F]lora Lake Development Associates Inc. and the other the tax identification number of Hyde Park, A Wisconsin Limited Partnership.
> . . .
> Please advise by return mail of the Tax Identification Number for your entity so that the interest bearing accounts may be established. Upon receipt of the Tax Identification Numbers and the escrow agent[']s fees, I shall establish the interest bearing escrow accounts.

JX-14.

These letters make clear the parties' intentions to form an escrow account and yet, the parties never "specifie[d] how or when or if the funds c[ould] ever be released." *DeFlora Lake Dev. Assocs. v. Hyde Park*, 689 F. App'x 93, 94 (2d Cir. 2017).  At trial, the parties' testimony confirmed that there was no agreement as to how the funds would be released.  5/9/2018 Tr. Trans. at 57:4–11 ("I know of no specific agreement that created the escrow or the trust conditions under which Mr. Wrobel was to release the funds.") (Mr. Johnson testifying); 5/9/18 Tr. Trans. at 199:24–200:2 ("A: Just that I would hold the money. Q: For how long?  A: Until there was an agreement or determination by a Court as to where it would go.") (Mr. Wrobel testifying); 5/10/18 Tr. Trans. at 64:1–13 ("Q: [W]hen the accounts were set up . . . did you have an agreement, a discussion with Mr. Johnson about what the terms of the escrow would before with respect to how, when and if the money could come out of escrow?  A: I don't remember a specific discussion other than I think it was both our beliefs. We had to sit down and agree as to what was happening with the money.") (Mr. Weinstein testifying).

Under New York law, the parties have failed to create a valid escrow agreement as there is no condition for release of the Wrobel Funds.[12] *Animalfeeds Int'l Inc. v. Banco Espirito Santo E Comercial De Lisboa*, 101 Misc. 2d 379, 383, 420 N.Y.S.2d 954, 957 (Sup. Ct. 1979) ("An escrow agreement is valid if the conditions for its termination are spelled out, even though the obligations of the recipient of the fund as to its further application are not.").

**b. What legal right does DeFlora Lake have to the Wrobel Funds?**

Having determined that the Wrobel Funds are not held in escrow, the Court must now look to New York law to determine ownership of the Wrobel Funds.  "As a general rule, New York law presumes that once funds are deposited in a bank account, the account holder has title

---

[12] All of the parties' claims to the funds in escrow are also time-barred. *DeFlora Lake Dev. Assocs. v. Hyde Park*, 689 F. Appx. 93, 94–95 (2d Cir. 2017).

to and control over those funds." *Rosen v. Chowaiki & Co. Fine Art Ltd. (In re Chowaiki & Co Fine Art Ltd.)*, 593 B.R. 699, 713 (Bankr. S.D.N.Y. 2018).  This presumption of ownership can be rebutted by evidence that another person really owns the property by demonstrating that she "exercises control over the property or that the ostensible owner holds the property for his benefit." *Id.*; *see also Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara ("Pertamina")*, 313 F.3d 70, 86 (2d Cir. 2002) ("Under New York law, we proceed from the presumption that Pertamina owns the disputed funds. It is clear, however, that this presumption may be rebutted by evidence that the Republic of Indonesia actually controlled the disputed funds, or that Pertamina merely held the funds for the Republic of Indonesia, in the manner of a trustee.") (cleaned up).  Additionally, New York Banking Law § 675(b) states that the making of a deposit into a joint bank account shall constitute "prima facie evidence . . . of the intention of both depositors or shareholders to create a joint tenancy and to vest title to such deposit or shares, and additions and accruals thereon, in such survivor."  The statute creates a presumption of joint ownership.  *See In re Carella*, 340 B.R. 710, 711 (Bankr. W.D.N.Y. 2006). This presumption of joint ownership "can be overcome by clear and convincing evidence that the joint account has been opened in that form as a matter of convenience only." *Id.*

When the dispute arose over the sale price of Parcels D, E, & G, the Wrobel Funds were intended to be placed in "escrow" until the parties could determine who was entitled to them under Amendment Five.  *See* JXs-12,13,14 (letters establishing "escrow" account for Wrobel Funds).  Evidence at trial demonstrated that the Wrobel Funds are not held in "escrow"; they are being held in two separate interest-bearing accounts,[13] one in the name of DeFlora Lake Development Assoc Ltd/Lewis D Wrobel Attorney and the other in the name of Hyde

---

[13] Testimony at trial indicated that Wrobel did not wish to be taxed on the interest accumulating on the Wrobel Funds and so the parties agreed to his suggestion of keeping the money in "two separate equal accounts."  5/9/18 Tr. Trans. at 201:18–25.  This arrangement was not disputed by either party.

Park/Lewis D Wrobel Attorney. JPTO ¶ 23; 5/9/18 Tr. Trans. 209:24–25. Each account bears

the tax ID number of either DeFlora Lake or Hyde Park, respectively. 5/9/18 Tr. Trans. at

201:23–25 (Wrobel testimony).

While it is undisputed that the parties did not intend to designate ownership rights

through the division of the Wrobel Funds into two separate bank accounts, that is in effect what

happened. As stated above, New York law presumes that the party named on the bank account

holds title to those funds. The accounts are not jointly held by DeFlora Lake and Hyde Park.

They are held by each party and Lewis Wrobel. And only Wrobel had "signature power" on the

accounts. 5/9/18 Tr. Trans. at 210:3–5 ("Q: And are you the only one with signature power on

the accounts? A: This is correct.") (Wrobel testifying). Wrobel admitted at trial, and it was not

disputed, that he did not have a personal interest in the Wrobel Funds. 5/9/2018 Tr. Trans. at

208:19–209:8.

This presumption of ownership of the Wrobel Funds in each account could be overcome

by either DeFlora Lake or Hyde Park having demonstrated at trial that it either exercised control

over the funds in the account on which it was not named. They did not. Or, the presumption

could be overcome by demonstrating that the funds were being held to benefit either party.

Without being able to assert claims to the money under the Land Contract and Amendment Five,

this is not possible; and the presumption of ownership must stand. DeFlora Lake and Hyde Park

are each entitled to the Wrobel Funds that are contained in the bank account bearing their name.

As DeFlora Lake is the legal owner of the Wrobel Funds deposited in its name, those

funds are property of the estate.

### c. Is this outcome consistent with the laws of equity?

Having come to the determination that the parties were only entitled to those Wrobel Funds being held in accounts under their own names, the Court wanted to assure itself that such a result was an adequate remedy at law.  *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 94 (1932) ("Suits in equity shall not be sustained in any court of the United States in any case where a plain, adequate, and complete remedy may be had at law.  That rule has always been followed in courts of equity.") (cleaned up).  In other words, since the parties have already been informed that they have no remedy at law under Amendment Five, the Court must determine whether the legal remedy of dividing the Wrobel Funds according to ownership of each bank account is "adequate and complete" or whether some alternate equitable remedy would be more appropriate.  *Carruthers v. Flaum*, 450 F. Supp. 2d 288, 310 (S.D.N.Y. 2006) ("[T]he [equitable] doctrine [of partial performance] holds that an otherwise unenforceable contract for the sale of land may be enforced in equity if plaintiff has relied on defendant's promise and performed some or all of the oral agreement.") (cited and quoted by the District Court in its decision remanding the case to this Court).  To this end, the Court resorted to the original intent of the parties for settling a dispute as to value, and ordered them to complete the MAI appraisal process set forth in Amendment Five.

According to Amendment Five, if after obtaining their own MAI appraisals, the parties could not agree on the Fair Market Value, the third appraisal would govern.  JX-6, ¶ 8.C(ii).  The third appraisal set the Fair Market Value of Parcels D, E, & G at $2,520,000.  ECF No. 71-1. Without taking into account the other credits that Hyde Park had received in the past, this sale alone has pushed the total over the Threshold of $1.8M.

Amendment Five provides that "[a]ll net proceeds on sale of any part of or parcel of the P[roperty] shall be paid to [DeFlora Lake] as a reduction of [Hyde Park's] indebtedness to [DeFlora Lake] . . . until the gross sales price and credits . . . on all accumulated sales is equal to $1,800,000." JX-6, ¶ 12. It goes on to state that "[a]fter closings of gross sales including credits . . . greater than $1,800,000 . . . Hyde Park shall retain an amount equal to fifty (50%) percent of any net sale price and the remaining balance available shall be paid to DeFlora Lake." *Id.* As the District Court notes, paragraph 12 of Amendment Five "appears to be ambiguous." Remand Dec. & Or. at 10.

The Court considered how the proceeds should be divided if it were to proceed under Amendment Five. The Court first calculated whether the Threshold was met as follows:

| | |
|---|---|
| Threshold: | $1,800,000.00 |
| Hyde Park's prior credits to Threshold: | - $534,231.58 |
| Amount needed to hit Threshold: | $1,265,768.42 |
| Amount of Credit from sale of Parcels D, E, & G: | $2,520,000.00 |

The "net sale price" could simply mean the Wrobel Funds. After all, they are indisputably the net proceeds of the sale of Parcels D, E, & G if no credits are taken into consideration. Thus, it is possible that the parties meant that they would share only the "actual" net proceeds of any sale once the imaginary "credits" were applied to reach the Threshold. Such an interpretation is in line with the actions of the parties directly following the dispute. They split the proceeds 50/50 and held them in "escrow" until it could be determined whether the Threshold had been met.

The "net sale price" could also mean that the parties would share in the net proceeds of the sale as if the sales price were the Fair Market Value as determined by the MAI appraisal

process.  If this were the case, the proceeds of the sale would fall somewhere between

$629,347.58 and $1,259,231.58, depending on whether one deducted the costs from the sale,

including the taxes paid at closing.[14]  Hyde Park argued to the Court that it should be entitled to

all of the Wrobel Funds under Amendment Five as paragraph 12 states: "[a]ny amounts due

[Hyde Park] when gross sale proceeds and credits are greater than $1,800,000 shall be paid in

cash by [DeFlora Lake?] to [Hyde Park]." JX-6, ¶ 12.

When read on its own, this sentence tends to suggest that DeFlora Lake is required to

turnover all "cash" to Hyde Park.  However, "fundamental contract law requires the parties'

intent to be discerned by reading the contract as a whole, and by considering all its clauses

together to determine if and to what extent one may modify, explain or limit another." *Allendale

Mut. Ins. Co. v. Excess Ins. Co., Ltd.*, 992 F. Supp. 271, 274 (S.D.N.Y. 1997).  The sentence

immediately preceding the one relied on by Hyde Park states: "[a]ll credits given pursuant to

paragraph 8 shall be treated as cash payments by [DeFlora Lake]." JX-6, ¶ 12. This sentence

tends to suggest that Hyde Park should not receive any of the "cash" as Hyde Park has received a

credit of over $1.2M under paragraph 8.  Under this interpretation, all of the Wrobel Funds go to

DeFlora Lake.  A position advocated by DeFlora Lake.

The most logical interpretation of the phrase "net sale price" is that it refers to the actual

proceeds received at the time of closing and not to the imaginary proceeds of a sale that never

occurred.  Such an interpretation is bolstered by the parties' acquiescence to split the Wrobel

Funds equally into two separate accounts immediately following the dispute in 1999.

Additionally, such an interpretation is consistent with the parties' legal rights to the Wrobel

---

[14] How the taxes should have been paid and who should bear those costs was hotly contested at trial.  Hyde Park insists that it is entitled to a credit for the taxes under Amendment Five as it was DeFlora Lake's responsibility to pay them.  DeFlora Lake insists that it paid the taxes at closing, as required.  Ultimately, the dispute need not to be resolved for purposes of this Decision as, no matter how it is calculated, the Wrobel Funds fall short of these numbers.

Funds under New York banking law.  The Court holds that the aforementioned remedy at law is adequate.

## 2.  Whether DeFlora Lake has an interest in the deeds and whether the deeds are property of the estate?

As to the deeds, those are in a true escrow account.  Under New York law, no formal or written agreement is required to create an escrow, however, delivery and retention by a third party until the occurrence of a contingency or performance of a condition is necessary.  *Shron v. M & G Promo Service, Ltd. (In re Anthony Sicari, Inc.)*, 144 B.R. 656, 660 (Bankr. S.D.N.Y. 1992).

Amendment Five contains the escrow agreement.  JX-6, ¶ 10 ("All such deeds with grantee left blank shall be held in escrow by the Deed Escrow Agent, named below."[15]).  It is not disputed that the deeds were delivered to Wrobel who holds them as a third-party depositary. Paragraph 10 of Amendment Five provides, in relevant part, that: "The Deed Escrow Agent shall release the pertinent instrument signed by either D[eFlora] L[ake] or H[yde] P[ark] from escrow for each closing upon precise written instruction signed by D[eFlora] L[ake].  JX-6, ¶ 10.

The rights and responsibilities of the Deed Escrow Agent are prescribed in paragraphs 18–21 of Amendment Five.  JX-6.  Paragraph 18 provides that the Deed Escrow Agent shall hold the Deeds in escrow "until such time as precise written instructions are provided by D[eFlora] L[ake] or H[yde] P[ark] as to the disposition of each deed."  And paragraph 21, provides payment for Wrobel's services and provides that in the event of non-payment, the escrow agreement is terminated and the deed should be delivered to "D[eFlora] L[ake] and H[yde] P[ark] respectively."[16]  Even though Amendment Five is ambiguous as to how each deed is to be

---

[15] Wrobel is named as the "Deed Escrow Agent" in paragraph 18. JX-6.
[16] Hyde Park had executed seven quitclaim deeds with grantee left blank and DeFlora Lake had executed seven deeds with grantee left blank. JX-6, ¶ 10.

released—either upon written instruction from DeFlora Lake or upon written instructions

provided by both Hyde Park and DeFlora Lake—either party could simply stop paying Wrobel

for his services and take back control of the deeds.  Outside of these scenarios, the delivery of the

deeds to Wrobel is irrevocable. *See Hassett v. Blue Cross & Blue Shield of Greater N.Y. (In re*

*O.P.M Leasing Srvs., Inc.)*, 46 B.R. 661 (Bankr. S.D.N.Y. 1985) ("[W]hile the property is in the

hands of the depositary it must be beyond the possession and control of the grantor.").

As this agreement provides for how and when the deeds may be released, it is a true

escrow agreement.

### a.  Whether deeds held in escrow are property of the estate?

"After the debtor's property interest is determined under state law, federal bankruptcy

law will dictate to what extent that interest is property of the estate." *In re Rosenshein*, 136 B.R.

368, 372 (Bankr. S.D.N.Y. 1992) (citing *In re N.S. Garrott & Sons*, 772 F.2d 462, 466 (8th

Cir.1985), *rehearing den.* (Oct. 14, 1985) (en banc).  Under New York law, a debtor who

deposits property in escrow retains legal title to the property ownership until the escrow

conditions are met.  *Musso v. N.Y. State Higher Education Srvs Corp.* (*In re Royal Business*

*School, Inc.*), 157 B.R. 932, 940 (Bankr. E.D.N.Y. 1993) (Duberstein, C.J.); *Rosenshein*, 136

B.R. at 374 ("Unless or until the conditions of the escrow arrangement are satisfied, the debtors

continue to have a beneficial interest in the Acquisition fund, which interest constitutes property

of the estate within the meaning of 11 U.S.C. § 541.").  Under § 541 of the Bankruptcy Code,

property of the estate includes all legal or equitable interests the debtor has in any property "by

whomever held."  Of course, § 541 does not expand debtor's rights beyond those that were

available to him upon the filing date of the petition.  *In re Gonzalez*, 559 B.R. 326, 329–30

(Bankr. E.D.N.Y. 2016) ("A trustee takes no greater rights than the debtor had on the date of filing the petition.).

Under the escrow agreement here, whatever interests DeFlora Lake had in the escrowed deeds as of the petition date are property of the estate.  This includes the right to exercise control over the release of the deeds to third parties (in accordance with Amendment Five) and the right to take back control of its deeds upon termination of the escrow agreement. JX-6, ¶ 10, 18–21.

### 3.  Whether Wrobel is a "custodian" under the Bankruptcy Code?

Escrow agents are generally not considered "custodians" under § 101(11) of the Bankruptcy Code because they are not "engaged in the general administration of the debtor's assets for the benefit of creditors."  *In re Camdenton United Super, Inc.*, 140 B.R. 523, 525 (Bankr. W.D. Mo. 1992).  The Bankruptcy Code defines a "custodian" in one of the following three ways:

> (A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;
> (B) assignee under a general assignment for the benefit of the debtor's creditors; or
> (C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

11 U.S.C. § 101(11).  There has been no evidence presented to the Court that Wrobel was holding either the deeds or the Wrobel Funds for the benefit of DeFlora Lake's general creditors. It is undisputed that the purpose of giving the deeds and Wrobel Funds to Wrobel was to settle a two-party dispute between DeFlora Lake and Hyde Park.  *Camdenton United*, 140 B.R. at 526 ("The escrow agreement came about to resolve a dispute that arose at the time of closing the sale of Debtor's assets. . . .  An escrow agreement which allows such a narrow possibility for a small

or non-existent class of creditors to reach the escrow funds is far from the general administration

of a debtor's assets for the benefit of creditors.").

Wrobel is not a "custodian" under the Bankruptcy Code.

### 4. Whether the Wrobel Funds or the deeds should be "turned over" to DeFlora Lake?

As Wrobel is not a "custodian," § 543 is inapplicable here, as that section governs

turnover of property by a custodian.  Section 542(a) governs turnover of property of the estate

held by an entity that is not a custodian.  11 U.S.C. § 542(a).  That section states:

> an entity, other than a custodian, in possession, custody, or control, during the
> case, of property that the trustee may use, sell, or lease under section 363 of this
> title, or that the debtor may exempt under section 522 of this title, shall deliver to
> the trustee, and account for, such property or the value of such property, unless
> such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).  A debtor under chapter 11 of the Bankruptcy Code is a debtor in possession

and has all the rights and powers of a trustee under the Bankruptcy Code.  11 U.S.C. §§ 1101(1),

1107(a).  A debtor in possession has the power to bring turnover proceedings to recover property

of the estate under § 542.  *Int'l Asset Recovery Corp. v. Thomson McKinnon Sec. Inc. (In re
Thomson McKinnon Sec. Inc.)*, 335 B.R. 520, 525 (S.D.N.Y. 2005) ("[T]he Code permits

turnover proceedings to be brought only by a trustee or debtor in possession.").

DeFlora Lake is a debtor in possession and is entitled to the turnover of property of the

estate from Wrobel.  The Court has found that the Wrobel Funds held in the name of DeFlora

Lake are property of the estate and must be turned over to DeFlora Lake.  The Wrobel Funds that

are being held in Hyde Park's name are not property of the estate and do not need to be turned

over.  The deeds being held in escrow are not subject to turnover unless and until the conditions

set forth in the escrow agreement are met.

## **Conclusion**

For the foregoing reasons, the Court expands its prior order of January 10, 2020 to

include the holdings stated herein, as it was directed to do by the District Court in its March 29,

2021 order.



/s/ Cecelia G. Morris

_____

**Dated: April 29, 2021**
**Poughkeepsie, New York**

**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**